# COURT OF APPEALS
## DECISION
## DATED AND FILED

## May 9, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

| | |
|---|---|
| **Appeal Nos.** **2023AP1237** **2023AP1255** **2023AP1272** | **Cir. Ct. Nos. 2021JC1** **2021JC2** **2021JC3** |

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT IV**

---

**2023AP1237**

IN THE INTEREST OF N.A., A PERSON UNDER THE AGE OF 18:

PORTAGE COUNTY,

    PETITIONER-RESPONDENT,

  V.

D. A.,

    RESPONDENT-APPELLANT.

---

**2023AP1255**

IN THE INTEREST OF D.A., A PERSON UNDER THE AGE OF 18:

PORTAGE COUNTY,

   PETITIONER-RESPONDENT,

 V.

D. A.,

   RESPONDENT-APPELLANT.

**2023AP1272**

IN THE INTEREST OF N.A., A PERSON UNDER THE AGE OF 18:

PORTAGE COUNTY,

   PETITIONER-RESPONDENT,

 V.

D. A.,

   RESPONDENT-APPELLANT.

APPEALS from orders of the circuit court for Portage County: PATRICIA BAKER, Judge. *Affirmed*.

¶1    BLANCHARD, J.[1]    These consolidated appeals involve orders of the Portage County Circuit Court closing CHIPS cases for three minor children of David and Rachel.[2]    David argues that the court was obligated to vacate the closure orders on the ground that the court erroneously assumed jurisdiction over the CHIPS cases.    David's jurisdictional challenge rests on the premise that the Waushara County Circuit Court, which presided over David and Rachel's divorce proceedings, was the only proper forum for the CHIPS proceedings, not the Portage County court.    I conclude that David forfeited this argument because he waited until after several years of CHIPS proceedings—which included multiple hearings over the course of many months, such as a three-day fact-finding hearing—were closed before first challenging the court's jurisdiction to preside over the CHIPS proceedings.    I also conclude that there is not a good reason now to overlook the forfeiture.    I further conclude that, even beyond its forfeiture, the jurisdictional argument lacks merit.    Accordingly, I affirm.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

Pursuant to WIS. STAT. RULE 809.10(3), these cases have been consolidated for briefing and disposition by an order of this court dated July 20, 2023.

[2] "CHIPS is the commonly used acronym to denote the phrase 'child in need of protection or services' as used in the Wisconsin Children's Code." *Marinette Cnty. v. Tammy C.*, 219 Wis. 2d 206, 208 n.1, 579 N.W.2d 635 (1998).    Separately, I use the same pseudonyms for the parents of the children as were used in a March 2022 opinion resolving an earlier appeal in this matter.    *See Portage Cnty. v. D.A.*, Nos. 2021AP1683, 2021AP1685, and 2021AP1686, unpublished slip op. (WI App Mar. 24, 2022), *rev. denied* 2022 WI 102, 996 N.W.2d 924, *cert. denied*, 143 S. Ct. 572 (2023).

## BACKGROUND

¶2    David and Rachel were married in 2010 and have three minor children.  The parents and all three children lived together in Waushara County until an altercation between the parents in November 2019 led to Rachel and the youngest child leaving Wisconsin for a residence that the family owned in California.

¶3    In December 2019, David commenced a family law action in the Waushara County Circuit Court, pursuant to WIS. STAT. § 767.41 and pertinent provisions of WIS. STAT. ch. 822, to obtain a court order that required Rachel to return to Wisconsin with the youngest child.  In January 2020, Rachel moved to Portage County, where she continuously resided after that.

¶4    Rachel filed a petition for separation in the Waushara County Circuit Court in June 2020.  David filed a counterclaim that turned the Waushara County case into a divorce action.

¶5    In November 2020, the Waushara County Circuit Court in the divorce action accepted Rachel and David's temporary agreement on physical placement of their children, under which they were to share equal time with the children.

¶6    Physical placement of the children did not change until January 2021.  That is when Portage County Health and Human Services ("Portage County human services") filed CHIPS petitions and a temporary physical custody request in Portage County Circuit Court.  After a hearing under CHIPS procedures, the Portage County court ordered the children held in nonsecure custody at Rachel's Portage County residence.  The CHIPS court order suspended physical placement

4

with David and granted him supervised visitation at the discretion of Portage County human services.[3]

¶7      The January 2021 CHIPS petitions and temporary physical custody request were the result of a social services investigation stemming from an October 2020 Child Protective Services report alleging that David physically abused the children in Waushara County. *See* WIS. STAT. § 48.24.   The investigation was a collaboration between Portage County human services and the Waushara County Health and Human Services Department.   The Waushara County department closed its child protection investigation on the ground that it could not substantiate that physical abuse had occurred in David's residence in Waushara County.

¶8      In May 2021, after a three-day fact-finding hearing on the CHIPS petitions, the Portage County court found that each child was in need of protection and services pursuant to some combination of the following grounds:  WIS. STAT. § 48.13(10) (neglect), (10m) (substantial risk of neglect), and (11) (suffering emotional damage).

¶9      In September 2021, after additional hearings, the Portage County court entered a dispositional order.  This continued the placement of the children with Rachel, again with David's visitation to be at the discretion of Portage

---

[3] On March 10, 2021, David filed a motion for a rehearing on the temporary physical custody order, which was denied by the Portage County court.

County, and ordered that supervision by Portage County human services continue for one year.[4]

¶10   In December 2021, the Waushara County court granted the parties a divorce. At that time, Rachel continued to live in Portage County and David lived in Waushara County. The divorce judgment made explicitly clear that its provisions regarding custody and placement of the children were "subordinate to" orders rendered by the Portage County court in the CHIPS proceedings.

¶11   In July 2022, Portage County human services filed in the Portage County court a request for closure of the CHIPS case pursuant to WIS. STAT. § 48.355(4g), which the circuit court granted in September 2022. The order granted Rachel sole legal custody and physical placement of the children and placed under Rachel's discretion David's supervised visitation with the children at a supervised visitation facility. The case closure order resulted in a modification to the court order entered in the Waushara County divorce action regarding custody and placement of the children. *See* § 48.355(4g)(e) (case closure orders "may modify a preexisting order of a court exercising jurisdiction in an action affecting the family and shall remain in effect until modified or terminated by a court exercising that jurisdiction").

¶12   In February 2023, seven months after the case closings, David filed the motion for postdisposition relief, pursuant to WIS. STAT. § 809.30(2)(i), that is

---

[4] David appealed the Portage County court's finding that the children were in need of protection or services and the accompanying dispositional orders. In March 2022 this court issued an unpublished decision affirming the orders of the circuit court. *See* **Portage Cnty. v. D.A.**, Nos. 2021AP1683, 2021AP1685, and 2021AP1686.

at issue in this appeal. He argued that "the case closing orders in these CHIPS cases must be vacated for lack of jurisdiction and the matter [must be] transferred to" the Waushara County court in the divorce action. After five months of no action on the motion by the circuit court, an order denying the motion was entered. *See* § 809.30(2)(i) (if a circuit court does not rule on a motion for postdisposition relief within 60 days of its filing, "the motion is considered to be denied"). David appeals.

## DISCUSSION

### I. Forfeiture

¶13 David has forfeited his jurisdictional argument because he failed to timely raise it, and there appear to be no sound reasons to overlook the extreme forfeiture. The record reflects that David first raised the jurisdictional argument in his February 2023 postdisposition motion, more than two years after the CHIPS petitions were filed and after many hearings. This came far too late to preserve the issue. *See Tina B. v. Richard H.*, 2014 WI App 123, ¶38, 359 Wis. 2d 204, 857 N.W.2d 432 (certain arguments are not preserved when raised for the first time in a postdisposition motion); *State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727 (arguments not preserved in the circuit court generally not considered on appeal).

¶14 I discuss separately below the nature of the jurisdictional argument, which is purportedly based on *State ex rel. Rickli v. County Ct. for Dane Cnty.*, 21 Wis. 2d 89, 123 N.W.2d 908 (1963), and a "judge shopping" concept. At no point prior to his motion for postdisposition relief did David present such an argument to the Portage County Circuit Court or purport to connect such an

argument to the court's exercise of discretion in assuming jurisdiction over the CHIPS cases.[5]  The Portage County court presided over CHIPS proceedings and issued multiple final orders from January 2021 through September 2022 without being presented with David's current jurisdictional challenge.  A potential challenge to the jurisdiction of the court over the matter at issue is of course a critical threshold concept for a party to raise in any litigation—not least in litigation that directly affects the lives of children.

¶15    The rule of forfeiture is "a rule of judicial administration" and "a reviewing court has the inherent authority to disregard" a forfeiture and "address the merits of an unpreserved issue in exceptional cases." *Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶17, 273 Wis. 2d 76, 681 N.W.2d 190.  It is true that neither party in this appeal recognizes the extreme forfeiture here.  But nothing in David's current arguments, nor that I discern from the record, would support the contention that this court should exercise its discretion to disregard the forfeiture, and numerous factors weigh against it.  *See Town of Mentor v. State*, 2021 WI App 85, ¶48, 400 Wis. 2d 138, 968 N.W.2d 716.  It is sufficient to point out three. First, the children here have already been the subject of voluminous litigation in two protracted legal actions.  Second, David fails to identify any reason that he could not have raised the same challenge to the court's jurisdiction at the outset of the CHIPS proceedings, and no reason is evident from the briefs on appeal or the record.  Third, as I now explain, the jurisdictional argument has no merit.

---

[5] David was without counsel at some hearings, but "[p]ro se litigants ... are still required to timely assert their rights.  If they do not, then they may forfeit those rights." *State v. Pope*, 2019 WI 106, ¶46, 389 Wis. 2d 390, 936 N.W.2d 606.  And David does not argue that his counsel was constitutionally ineffective by failing to timely raise this argument in the circuit court.

## II. Assumption of Jurisdiction by Portage County CHIPS Court

¶16    The parties do not dispute that both the Portage County court in the CHIPS actions and the Waushara County court in the divorce action had the statutory authority to exercise concurrent jurisdiction over the custody and placement of the children.  *See* WIS. STAT. § 48.13 (jurisdiction over children allegedly in need of protection or services); WIS. STAT. § 48.15 (permitting concurrent jurisdiction); WIS. STAT. § 767.01(1) (jurisdiction of circuit court in actions affecting the family); WIS. STAT. § 767.41 (authorizing orders regarding physical placement and custody incident to actions affecting the family).  David's tardy argument is that the Portage County court erroneously exercised its discretion when it assumed jurisdiction over the CHIPS cases because the Waushara County court was already exercising what would be concurrent jurisdiction in the divorce action.  *See* WIS. STAT. § 48.15 (permitting concurrent jurisdiction exercised by, for example, a circuit court in a CHIPS action and a circuit court in a divorce action).  David rests this argument entirely on our supreme court's decision in ***Rickli***.  He contends that Rachel engaged in what he characterizes as the same "judge shopping" conduct illustrated in ***Rickli*** that can require a court to decline to assume "paramount," CHIPS-based jurisdiction in deference to a court with concurrent jurisdiction.  As part of this argument, he contends that, applying the reasoning in ***Rickli*** here, "when the [Portage County]

9

court … assumed jurisdiction of these CHIPS cases it was violating the strong public policy against judge shopping."[6]

¶17 When circuit courts in two counties have valid, concurrent statutory jurisdiction over the placement and custody of the same children, we review the assumption of jurisdiction by the second of the two courts to assume jurisdiction to determine if it constituted an erroneous exercise of discretion. *See **Rickli***, 21 Wis. 2d at 98 (applying erroneous exercise of discretion standard to assumption of jurisdiction by court in the ch. 48 action, despite the supreme court's lack of "superintending control" to issue a mandate to that court due to the procedural posture of the case).

¶18 "A circuit court properly exercises its discretion when it employs a rational thought process based on an examination of the facts and an application of the correct standard of law." ***Sheboygan Cnty. HHS v. Julie A.B.***, 2002 WI 95, ¶43, 255 Wis. 2d 170, 648 N.W.2d 402. The court is required to have "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." ***Long v. Long***, 196 Wis. 2d 691, 695, 539 N.W.2d 462 (Ct. App. 1995).

---

[6] David does not argue that the Portage County CHIPS proceedings should have been venued in a different county, and in any case such an argument appears not to have been preserved through a motion to change venue. *See* WIS. STAT. § 48.185(1)(a)-(b) (venue for CHIPS action proper in the county where the child "resides" or where the child is "present").

On a related note, David contends that the Portage County court was "unfair to [him] by making him litigate child custody and support issues" in a county adjoining his county of residence. However, David fails to explain how this inconvenience could support his jurisdictional challenge.

¶19    As I explain below, the supreme court's analysis in ***Rickli*** primarily focuses on the general rule that courts presiding over WIS. STAT. ch. 48 actions have "paramount" jurisdiction over courts addressing overlapping matters involving children through other kinds of actions. David purports to rely on ***Rickli*** for an exception to this general rule. But the facts in ***Rickli*** were extreme and undisputed, involving an intentional violation of a custody order by one parent temporarily moving a martial child to a county where neither parent resided, for the apparent purpose of obtaining orders in conflict with the existing order. As I detail further below, the facts here bear little resemblance to the facts of the instant case.

¶20    In ***Rickli***, there were conflicting orders of a Dane County court in a divorce action and a La Crosse County court in an action equivalent to a present-day CHIPS action, both concerning the custody and placement of a marital child. ***Rickli***, 21 Wis. 2d at 91, 97. In the earlier of the orders, the divorce judgment granted legal custody of the child to the father, who lived in Iowa. ***Id.*** at 91. The mother sought a modification of custody and placement, and the court set a hearing on the motion, but without granting temporary relief in the meantime. ***Id.*** at 91-92. The following business day, the mother filed a ch. 48 petition in the La Crosse County court alleging that the child was "in need of special care and treatment … and his … legal custodian [was] unable to provide it …." ***Id.*** at 92, 94. In the petition, the mother listed the child's address as a La Crosse County hotel room even though, under the applicable order in the divorce action, the child was supposed to be placed with the father in Iowa at the time. ***Id.*** at 92. Thus, so far as the opinion reveals, La Crosse County had no meaningful connection to mother, father, or child, aside from the brief presence of the mother and child there. *See **id.*** at 92, 98. The La Crosse court in the WIS. STAT. ch. 48 action

11

"accepted the petition … and ordered [the mother] to detain [the child] in custody at La Crosse until further order …." ***Rickli***, 21 Wis. 2d at 92. Two days later, the Dane County court in the divorce action "issued an order … directing [the mother] to show cause why she should not be held in contempt for failure to return [the child] at the end of" her placement. ***Id.*** The Dane County court ordered the mother "to turn [the child] over to the sheriff, but she refused." ***Id.*** The Dane County court, aware of the ch. 48 court order that the mother detain the child in La Crosse, then "ordered the sheriff to take custody of [the child] and deliver him to [the father]." ***Rickli***, 21 Wis. 2d at 93.

¶21 The first question was, did the La Crosse County court, as the court in the WIS. STAT. ch. 48 action, obtain jurisdiction over the issue of proper custody of the marital child? ***Rickli***, 21 Wis. 2d at 93. The court answered this question yes. ***Id.*** at 93-94.

¶22 The second question was, what effect did the proceedings of the court in the WIS. STAT. ch. 48 action have on the jurisdiction of the Dane County court as the court presiding over the divorce action? ***Rickli***, 21 Wis. 2d at 93. The court answered this question by articulating the following standards. WISCONSIN STAT. § 48.13 grants a circuit court "exclusive original jurisdiction over a child alleged to be in need of protection or services" under the grounds listed in § 48.13(1)-(14). *See **Rickli***, 21 Wis. 2d at 94; ***M.L.-F. v. Oneida Cnty. DHHS***, 2016 WI App 25, ¶¶21-23, 367 Wis. 2d 697, 877 N.W.2d 401. Nonetheless, WIS. STAT. § 48.15 provides that nothing in ch. 48 "deprives another court of the right to determine the legal custody … or guardianship of a child if the legal custody or guardianship is incidental to the determination of an action pending in that court." *See **Rickli***, 21 Wis. 2d at 94-95. Thus, in ***Rickli***, the court in the divorce action

could validly issue a legal custody and placement order incidental to divorce proceedings in that court, even as the court in the ch. 48 action considered whether to make a finding regarding the then-equivalent to a child in need of protection or services proceeding. *See id.* at 96; WIS. STAT. § 767.41(1). However, if a CHIPS action concerning marital children arises while divorce proceedings involving the children are ongoing, the circuit court presiding over the divorce proceedings need not stay the proceedings, so long as its orders "do[] not conflict with" those of the ch. 48 court. *See **Rickli***, 21 Wis. 2d at 97. As the court explained in ***Rickli***: "[WISCONSIN STAT. § 48.15] makes the jurisdiction of the [ch. 48] court paramount to that of the divorce court," which "means at least that the burden is on the divorce court to avoid taking action which is or is likely to be in conflict with action taken by the [ch. 48] court." ***Rickli***, 21 Wis. 2d at 96-97; *see also **id.*** at 95 (circuit court in divorce action "powerless to make a contrary finding or different disposition as an incident of the divorce action" when court in ch. 48 action makes findings that a child is in need of protection or services).[7]

¶23 With these principles in mind, as a rule of decision in ***Rickli***, the supreme court vacated the order of the Dane County court in the divorce action that directed the sheriff to take custody of the child and deliver him to the father, because that order conflicted with the order of the court in the WIS. STAT. ch. 48

---

[7] Although WIS. STAT. § 48.15 has been amended several times since ***Rickli*** was decided in 1963, the statute still contains the "paramount" language it had when ***Rickli*** was decided in 1963, and this court applied pertinent logic in ***Rickli*** in the context of WIS. STAT. ch. 48, the Children's Code, as recently as 2016. ***State ex rel. Rickli v. County Ct. for Dane Cnty.***, 21 Wis. 2d 89, 94-95, 123 N.W.2d 908 (1963); ***M.L.-F. v. Oneida Cnty. DHHS***, 2016 WI App 25, ¶21, 367 Wis. 2d 697, 877 N.W.2d 401. Neither David nor the County argue that changes to the statute are relevant to this appeal. *Compare* WIS. STAT. § 48.15 (1963), *with* WIS. STAT. § 48.15 (2021-22).

action, which had "paramount" jurisdiction under WIS. STAT. § 48.15.  *Rickli*, 21 Wis. 2d at 97-98.

¶24    However, the supreme court also stated that, if the court in the WIS. STAT. ch. 48 action had been informed of the extreme facts leading to the mother initiating that action, "it would have been an [erroneous exercise] of discretion to authorize the filing of the petition and to accept jurisdiction over [the child]." *Id.* Instead, "the discretion of the … court" in the ch. 48 action would have been "best exercised by dismissing the proceeding before it in order to permit the … court to proceed" in the divorce action.  *Id.* at 99.[8]  This was based on the following facts. The mother had violated an existing, valid custody order by taking the child temporarily to a county where neither of his parents resided, and the mother's petition to the La Crosse County court was filed soon after the Dane County court's denial of the mother's request for temporary custody.  *Id.*  Given these facts, the supreme court concluded that, when the mother filed the La Crosse County petition, she "was motivated by a desire for a hearing before a different judge" due to her dissatisfaction with the rulings in the Dane County action.  *Id.* at 98-99.

¶25    With this as background, David acknowledges that our supreme court in *Rickli* "[does] not use the term 'judge shopping,'" but he argues that this "is the only basic legal principle which could support the high court's ruling."

---

[8]  Pointing out that the writ at issue was not directed to the court presiding over the WIS. STAT. ch. 48 action, and therefore that the court in the ch. 48 action was not a party to the appeal, the supreme court stated that it was not "in a position to exercise superintending control over the action of that court."  *Rickli*, 21 Wis. 2d at 98.  Rather, the supreme court merely expressed its view of how that court should have proceeded if it had all the relevant facts.  *See id.* at 98-99.

14

With that premise, he argues that Rachel's conduct is analogous to what amounted to "judge shopping" by the mother in *Rickli* and therefore the Portage County court erroneously exercised its discretion in assuming jurisdiction. He suggests that we should conclude that the Portage County court in considering his motion for postdisposition relief should have concluded that Rachel and her attorney, acting out of dissatisfaction with the November 2020 placement order of the circuit court in the divorce action, decided to "judge shop" for a more favorable placement result. The theory is that they agreed that Rachel would make a report to Portage County human services in an effort to generate a CHIPS petition and proceedings in Portage County. This argument rests on a snippet of notes from a Portage County social worker's November 2020 initial assessment, completed pursuant to WIS. STAT. § 48.24(1). There, the social worker stated that Rachel's divorce counsel "advised [Rachel] to make a report to [Child Protective Services]."

¶26    David's theory is not well supported by the record and in any case it does not support an inference of "judge shopping," as he defines that concept. Assuming in David's favor that Rachel did file such a report and this contributed to the initiation of the Portage County CHIPS petitions, it was ultimately Portage County human services—not Rachel—that investigated the well-being of the children and decided to file CHIPS petitions. David does not explain on what basis the circuit court presented with the postdisposition motion was supposed to conclude that Rachel exerted influence over Portage County human services that lead to their CHIPS petitions. Among other problems with this argument, the petition alleges that both David *and* Rachel were responsible for the children's abuse and neglect, allegations they both denied in responsive pleadings. In sum, David fails to support even the most basic premise of his argument by explaining

15

why the Portage County Circuit Court was obligated to conclude that Rachel and her attorney attempted to "judge shop."

¶27 It is self-evident, and does not merit detailed discussion, that David's speculative and essentially unsupported theory bears no resemblance to the undisputed facts in *Rickli*, detailed above. *See Rickli*, 21 Wis. 2d at 91-92, 98-99. Notably, the Portage County court here was aware of the divorce proceedings in Waushara County when it held a temporary physical custody hearing in response to the CHIPS petitions in January 2021. In its final judgment of divorce, granted in December 2021, the Waushara County court stated that the custody and placement arrangement within that judgment was "subordinate to the CHIPS order in Portage County." David emphasizes that the Waushara County court rendered its placement order before any final CHIPS order was issued by the Portage County court, which is an isolated fact superficially matching events in *Rickli*. But David fails to come to grips with the explicit "subordina[tion]" by the Waushara County court of its orders to those of the Portage County court.

¶28 David contends that Rachel's two-month stay at the marital residence in California with the youngest child and subsequent move to Portage County resembles the conduct of the mother in *Rickli*. However, unlike the mother in *Rickli*, Portage County was not a place to which Rachel moved just days prior to the filing of the CHIPS petitions, nor was it a place to which Rachel fled after the Waushara County divorce court issued placement and custody orders. Here, when the CHIPS petition was filed in January 2021, Rachel had been, for approximately one year, a resident of the county exercising WIS. STAT. § 48.13 jurisdiction over the marital children. *Cf. Rickli*, 21 Wis. 2d at 98.

## CONCLUSION

¶29    For all of these reasons, I conclude that David forfeited the jurisdictional issue, forfeiture should not be overlooked, and in any case the Portage County Circuit Court did not erroneously exercise its discretion when it denied, through inaction, David's postdisposition motion.

*By the Court*.—Orders affirmed.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)5.